Berenice Joannes, Transferee v. Commissioner.
Joannes v. Commissioner
Docket No. 660-64.
United States Tax Court
T.C. Memo 1967-138; 1967 Tax Ct. Memo LEXIS 122; 26 T.C.M. (CCH) 622; T.C.M. (RIA) 67138; June 26, 1967
*122 Robert E. Nelson, Columbus Bldg., Green Bay, Wis., for the petitioner. Denis J. Conlon, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent determined that petitioner, Berenice Joannes, as transferee of certain assets of H. Roy Joannes, is liable for deficiencies in income tax and additions to tax as follows: Additions to Tax - I.R.C. 1939
Year
Deficiency § 291(a) § 293(b) § 294(d)(1)(A)
Totals
1950
$ 4,628.74
$2,314.37
$ 431.21
$ 7,374.32
1951
3,653.18
$ 730.64
1,826.59
328.79
6,539.20
1952
6,375.64
1,264.77
3,187.82
569.16
11,397.39
Totals
$14,657.56
$1,995.41
$7,328.78
$1,329.16 [1]
$25,310.91
The issues for decision are (1) whether Berenice Joannes is precluded from contesting the merits of the Federal tax liabilities determined to be due from H. Roy Joannes, transferor, for the taxable years 1950, 1951, and 1952; (2) whether the determination by respondent of the Federal tax liabilities of H. Roy Joannes is correct; (3) whether said liabilities are barred by the statute of limitations; and (4) whether Berenice Joannes is liable as *123 transferee for these liabilities, plus interest. In the interest of clarity the fourth issue, relating to Berenice Joannes' liability as transferee, will be treated separately from the first three issues, relating to the transferor's liability for Federal income tax deficiencies and additions to tax. In addition, the fourth issue will be subdivided into its various subsidiary questions and separate findings of fact will be made for each. Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Findings of Fact Issues 1, 2, and 3 The late H. Roy Joannes (hereinafter referred to as H. Roy) and Berenice Joannes (hereinafter referred to as petitioner) were husband and wife. They were married on July 14, 1947, and their legal residence was Green Bay, Wisconsin, until the death of H. Roy on March 15, 1965. Since that date petitioner has continued to reside in Green Bay. H. Roy filed individual Federal income tax returns for the years 1950, 1951, and 1952 with the district director of internal revenue at Milwaukee, Wisconsin. The return for the taxable year 1950 was timely filed on March 15, *124 1951. The returns for the taxable years 1951 and 1952 were not timely, having been filed on June 16, 1952, and July 6, 1953, respectively. On May 1, 1959, respondent sent a statutory notice of deficiency covering these three taxable years to H. Roy. [2]
Respondent's determination of deficiencies for the years in question was based in large part upon a recomputation of H. Roy's gross income pursuant to the socalled "bank deposit" method. H. Roy did not have adequate records covering these years. During the years in question H. Roy and petitioner each maintained a checking account in their individual names and two savings accounts in their joint names at the West Side State Bank in Green Bay. Respondent's analysis of the bank deposits of H. Roy and petitioner for the taxable years in question revealed the following factual situation: [3] *125 1950
1951
1952
Total deposits
$20,524.51
$17,065.56
$18,789.84
Add: Interest credited to savings accounts: #22020
1.13
.32
#23011
8.82
3.81
Subtotal
$20,525.64
$17,074.70
$18,793.65 businesses. Thus, the petitioners have never received a 1950
1951
1952
Forwarded
$20,525.64
$17,074.70
$18,793.65
Add: Known income received: Salary received from Northeastern Boiler & Welding
5,880.00
6,478.35
6,905.00
Reimbursed expenses from Northeastern Boiler &
Welding
238.75
31.95
161.38
Christmas check from Northeastern Boiler & Welding
25.00
25.00
Gross rental income from income tax return
400.00
590.00
Gross income from public accounting work: Total receipts per Sch. C, Form 1040 $7,190
Less: 1950 salary as above 5,880
1,310.00
Gross accounting income
656.00
580.00
Gross income from Brewery statistic report
130.00
135.00
Salary from Stock Gro., Inc., per return
300.00
Subtotal
$ 7,853.75
$ 7,321.30
$ 8,671.38
Total
$28,379.39
$24,396.00
$27,465.03
Less: Deductions: Deposits identified as salary checks from North-
eastern Boiler & Welding
980.00
1,225.00
1,475.00
Deposits identified as expense reimbursement
checks from Northeastern Boiler & Welding
11.90
5.35
Interbank account transfers
900.00
900.00
1,500.00
Deposits representing funds borrowed from West
Side State Bank
600.00
650.00
Unidentified checks deposited that could represent
receipts from public accounting work, brewery
statistic reports, rents and salary from Stock
Gro., Inc.
1,710.00 [1] *140 786.00 [1]
738.09 [1]
Subtotal
$ 4,190.00
$ 3,572.90
$ 3,718.44
Subtotal forwarded
$ 4,190.00
$ 3,572.90
$ 3,718.44
Total currency deposited that could represent
funds available from undeposited salary and
reimbursement checks on rental, public account-
ing, brewery statistics & Stock Gro., income
5,308.21
3,808.39
2,185.00
Total deductions
$ 9,498.21
$ 7,381.29
$ 5,903.44
Corrected gross income
$18,881.18
$17,014.71
$21,561.59
Less: Expenses deductible to arrive at adjusted
gross income
225.00
227.50
829.50
Corrected adjusted gross income
$18,656.18
$16,787.21
$20,732.09
*126 1950
1951
1952
n1 Income from: Gross rents
$ 400.00
$ 590.00
Gross public acctg.
1,310.00
$ 656.00
580.00
Brewery statistics
130.00
135.00
Stock Gro.
300.00
Total
$ 1,710.00
$ 786.00
$ 1,335.00
Limited to amount of unidentified checks
$ 738.09
During the taxable years in question H. Roy was employed as the controller of Northeastern Boiler & Welding Co., Ltd. (hereinafter referred to as Northeastern). In this capacity he had general access to the books and records and some access to signed blank checks of Northeastern. As part of his function as controller he picked up Northeastern's cancelled checks from the Kellogg Citizens National Bank in Green Bay and from them prepared the bank reconciliations on behalf of Northeastern. After the failure of Northeastern and the appointment in 1953 of a trustee in bankruptcy, and at the direction of that trustee, an audit of Northeastern's books was performed. The audit revealed that some of Northeastern's cancelled checks were missing and further searches have failed to disclose their whereabouts. Among these missing checks were checks which according to Northeastern's disbursement records were purportedly issued as follows: Date of
Check
Entry
No.
Amount
Paid to
Apr. 1950
1638
$1,667.52
C&NW R.R. Co. (Freight)
Mar. 1951
3477
1,945.43
U.S. Steel Co. (Direct cost)
Oct. 1951
4623
2,402.32
U.S. Steel Co. (Material)
Oct. 1951
4649
990.90
C&NW R.R. Co. (Freight)
Nov. 1951
4847
568.62
C&NW R.R. Co. (Freight)
Nov. 1951
4869
385.05
C&NW R.R. Co. (Freight)
Nov. 1951
4934
323.34
C&NW R.R. Co. (Freight)
Jan. 1952
5158
1,755.30
C&NW R.R. Co. (Freight)
Jan. 1952
5340
488.72
C&NW R.R. Co. (Freight)
Feb. 1952
5466
1,386.31
C&NW R.R. Co. (Freight)
Feb. 1952
5495
1,223.76
C&NW R.R. Co. (Freight)
Mar. 1952
5619
1,710.61
C&NW R.R. Co. (Freight)
Mar. 1952
5650
1,223.76
C&NW R.R. Co. (Freight)
Apr. 1952
5892
2,683.80
U.S. Steel Co. (Material)
July 1952
6223
2,414.14
U.S. Steel Co. (Material)
*127 The records of both Chicago and Northwestern Railroad Company and U.S. Steel Company however failed to disclose the receipt of any of these amounts. During this same general period of time, checks were deposited in H. Roy's account at the West Side State Bank as follows: Date
Amount
5/ 3/50
$1,667.52
3/ 5/51
1,945.43
10/19/51
2,402.34
11/26/51
2,267.91
1/28/52
2,244.02
2/21/52
2,610.07
3/12/52
2,944.37
4/ 3/52
2,683.80
6/ 5/52
2,414.14 During the years in question, in addition to his employment with Northeastern, H. Roy was also engaged in the operation of a sole proprietorship involving the compilation of statistics on the brewing industry and the preparation of Federal income tax returns for the general public. Also, during the years in question H. Roy received neither gifts, bequests, inheritances, nor does the record reveal the receipt of any tax-exempt income. After receipt of the statutory notice of deficiency sent by the respondent on May 1, 1959, H. Roy filed a timely petition with this Court for a redetermination of the alleged deficiency. On March 28, 1962, a stipulated decision was entered in the case of H. Roy Joannes, Docket No. 81684, which ordered and decided that there were deficiencies *128 in income tax and additions to the tax as follows: Additions to Tax - I.R.C. 1939
Year
Deficiency § 291(a) § 293(b) § 294(d)(1)(A)
1950
$4,628.74
$2,314.37
$431.21
1951
3,653.18
$ 730.64
1,826.59
328.79
1952
6,375.64
1,264.77
3,187.82
569.16
Petitioner argues (1) that the above decision is not binding upon her, (2) that the deficiencies as determined by respondent are incorrect, and (3) that the taxable year 1950 is barred by the statute of limitations. Opinion Issues 1, 2, and 3 The first issue for determination is whether petitioner may contest the Federal tax liabilities and the additions to tax found to be due from H. Roy for the years 1950, 1951, and 1952 by the decision of this Court entered pursuant to the stipulation of the parties. Petitioner argues that a stipulated decision entered by this Court involving her alleged transferor does not operate as a bar as to her in a later proceeding. Respondent on the other hand urges that the stipulated decision in the earlier proceeding precludes further litigation of the matter of the Federal tax liabilities and the additions to tax therein decided. We agree with petitioner. There is no question as to the applicability of the principle of res judicata *129 and/or collateral estoppel to tax cases, , and more specifically to cases involving transferee liability. (C.A. 8, 1938). But, in order to employ either doctrine as a bar in the later proceeding, it must be shown that the earlier determination against the transferor was on the merits. ; ; , affd. (C.A. 8, 1958); and . In the case at bar the earlier decision was not "on the merits" but rather was based upon the stipulation of the parties. From that decision it is not possible to determine whether the agreement of the parties was based upon the merits of the dispute or upon collateral considerations. On the facts before us, therefore, we hold that the case at bar is controlled by the Supreme Court's rationale in . The Court in denying the application of the principle of collateral estoppel to a later proceeding stated: A judgment entered with the consent of the parties may involve *130 a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties. In that case, as in the case before us, the Court found that they were unable to tell whether the agreement of the parties was based upon the merits or on some collateral consideration. See also , affd. (C.A. 10, 1961), in which we stated that "A decision by this Court, entered upon a stipulation of deficiencies, without a hearing on the merits, is not a decision on the merits such as will support a plea of collateral estoppel." Having held that the petitioner may properly litigate these matters, the second issue for determination is whether these Federal tax liabilities and additions to tax determined by respondent to be due from H. Roy for the years 1950, 1951, and 1952 are correct. Under section 1119(a) the burden of proof rests upon petitioner to show that respondent's proposed deficiencies are incorrect. [4] We are of the opinion that petitioner has failed to meet this burden. *131 Moreover, the record reveals affirmative evidence, to wit, H. Roy's admission in the earlier proceeding in stipulating to the deficiencies, and the testimony of respondent's witnesses at the trial on this matter, which affirms the correctness of the alleged deficiencies. Respondent demonstrated that it had computed H. Roy's income on the basis of the so-called bank deposit method, which is a recognized and approved method in reconstructing income where the taxpayer's records are inadequate. , affd. (C.A. 2, 1949), certiorari denied . The factors of respondent's computation and the apparent sources of these bank deposits are set forth in detail in our Findings of Fact and we find no necessity for a detailed discussion here. Petitioner has attempted to demonstrate particular instances wherein respondent's income reconstruction is at odds with the notations on H. Roy's deposit slips. Even were we to agree with petitioner's contention that in such instances the deposit slip notations show that specific checks of Northeastern were not *132 directly traceable to H. Roy's account, this does not per se demonstrate that the unexplained deposit represented income which was nontaxable. [5]
Since it is well settled that unexplained bank deposits are evidence of the receipt of taxable income, (C.A. 6, 1940), affirming a Memorandum Opinion of the Board of Tax Appeals, petitioner must, in order to meet her burden, show that such deposits do not represent current income, and this she has not done. She has merely pointed to various possible theories to explain the deposits; she has not produced evidence to substantiate them. We therefore decide this issue in favor of respondent. With reference to the additions to tax under section 291(a) and 294(d)(1)(A), petitioner has not offered any evidence whatsoever on these points, and on that basis we sustain respondent's determinations as correct. With reference to the additions to tax under section *133 293(b), however, the burden is upon respondent to show that some part of the deficiency is due to fraud with the intent to evade tax. Section 1112. We are of the opinion that respondent has successfully met his burden and hold for him accordingly. On the issue of fraud, the evidence introduced reveals that this Court adopted, in a decision dated March 28, 1962, in the case of H. Roy Joannes, Docket No. 81684, a stipulation of the parties thereto that there were additions to tax by reason of fraud in each of the three years in question. That stipulation and its adoption by this Court in the earlier action is sufficient as an admission of H. Roy as to the existence of fraud in the case before us. . We are also of the opinion that the record concerning H. Roy's understatement of his income on his returns for the years in question gives rise to an inference of fraud with an intent to evade tax. We therefore hold that, on the strength of the above factors, respondent has met his burden of showing fraud. See Petitioner, on the other hand, has not been able to demonstrate *134 the existence of any factors which in our opinion would overcome or lessen the weight of this evidence, particularly of H. Roy's stipulation as to the existence of such fraud. In this situation we hold that respondent's evidence is sufficient to sustain his allegation of fraud. In summary therefore we hold that respondent's determination of Federal tax liabilities and of additions to tax for the taxable years 1950, 1951, and 1952 is correct. Next, petitioner urges that the assessment of tax and additions to tax for the taxable year 1950 are barred by the statute of limitations. Respondent, on the other hand, argues that under section 276(a) the statute of limitations is not a bar. Section 276(a) provides that: In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. Again, the burden of proving the element of fraud is on respondent and as discussed previously we hold that respondent has met his burden. We therefore hold that on the facts before us the statute of limitations does not operate as a bar to the assessment *135 and collection of the deficiency and additions to tax for the taxable year 1950. Issue 4. Whether petitioner is liable as transferee for the income tax deficiencies and additions to tax found to be due from H. Roy Transfer of a Cadillac automobile Findings of Fact In 1947 H. Roy and petitioner were married. At that time H. Roy was the owner of a Cadilla automobile (hereinafter referred to as car #1). Later H. Roy purchased with his own funds a second Cadillac automobile (car #2). Petitioner was in the habit of using car #2 and H. Roy used car #1. [6] In 1950 H. Roy acquired a 1950 Cadillac automobile (car #3), trading in car #1 in the process. The new automobile had a fair market value of $3,700. After the acquisition of car #3, H. Roy was in the habit of using car #2 and petitioner used car #3. The title to car #3 was taken in petitioner's name. At the time car #3 was acquired she paid an additional undisclosed sum of money in order to obtain a different model than H. Roy had ordered. Ultimate Findings of Fact H. Roy transferred to petitioner without consideration in *136 the year 1950 a new Cadillac automobile. The value of the asset transferred was $3,700. Transfer of the house and lot located at 319 S. Quincy Street, Green Bay, Wisconsin Findings of Fact On December 24, 1946, H. Roy received, as a gift, from his sisters, Bernice Van Oss and Edith Joannes, a house and lot located at 319 S. Quincy Street, Green Bay, Wisconsin (hereinafter referred to as the Quincy Street property). Later in 1947, H. Roy transferred the Quincy Street property to petitioner pursuant to a prenuptial agreement. H. Roy however remained the owner of record. Pursuant to an investigation by a revenue agent, a report dated September 10, 1962, was made as to H. Roy's financial condition on that date. In conjunction with that report an affidavit was filed by H. Roy, under penalty of perjury, that he was insolvent. In listing his assets, H. Roy swore that: I was joint tenant of record in property at 319 S. Quincy St., Green Bay, from 1947, but my wife actually owned the entire property by virtue of an antinuptial agreement. * * * This affidavit was introduced by respondent for the truth of the statements contained therein, namely that H. Roy had liabilities in excess of his assets *137 and to demonstrate that collection possibilities against H. Roy had been exhausted without success. On July 18, 1951, H. Roy and petitioner executed a mortgage in favor of the Green Bay Savings and Loan Association on the Quincy Street property in the amount of $12,500. This loan was negotiated by H. Roy and the loan papers were signed by him individually as he appeared on the deed as the owner of record. The Quincy Street property was sold on August 25, 1953, for $19,500, less allowances. From this amount the balance due on the above loan, then $11,564.92, was paid. The remainder of the sales proceeds was retained by petitioner. Ultimate Findings of Fact Respondent must accept as a fact that H. Roy transferred the QUINCY Street property to petitioner pursuant to a prenuptial agreement in 1947 and that from that date petitioner was, in fact, the equitable owner of the property. Transfer of the property commonly known as 640 Stambaugh Road, Green Bay, Wisconsin Findings of Fact On May 29, 1950, the property commonly known as 640 Stambaugh Road, Green Bay, Wisconsin (hereinafter referred to as the Stambaugh Road property) was conveyed to petitioner from the Town & Country Corporation. *138 The cost of the property, which consisted only of land, was $3,500. The purchase price was paid substantially in cash. Construction of a residence on the Stambaugh Road property Findings of Fact During the years in question H. Roy and petitioner had a residence constructed on the Stambaugh Road property, title to which was in petitioner's name. Costs incurred in such construction, which were paid directly by H. Roy by issuing checks drawn on his own account at the West Side State Bank, were as follows: Year
Payee
Amount
1951
Bethlehem Steel Co.
$ 223.97
1951
Henkelman Construction
1,000.00
1952
East River Lumber & Fuel
200.00
1952
Henkelman Construction
1,000.00
1952
Henkelman Construction
2,000.00
1952
Henkelman Construction
450.00
1952
Henkelman Construction
571.74
1952
Henkelman Construction
360.00
1952
Henkelman Construction
700.00
1952
East River Lumber & Fuel
200.00
1952
Henkelman Construction
295.48
1952
Henkelman Construction
1,800.00
1952
Leonard Reis
200.00
1952
Leonard Reis
800.00
1952
Webb Landscaping
300.00
1952
Richard Burnham
150.00
Total
$10,251.19 In addition, Henkelman Construction was paid $2,535 in 1951 by H. Roy by means of a bank money order. On August 7, 1951, November 5, 1951, and December 21, 1951, the Green *139 Bay Savings & Loan Association, as part of the payout on the mortgage loan on the Quincy Street property, issued checks in connection with the construction to Henkelman Construction Company in the amounts of $4,325, $6,485, and $1,689, respectively, totaling $12,499. On November 19, 1953, petitioner obtained a mortgage loan of $12,000 from the Denmark State Bank, Denmark, Wisconsin, on the residence located at 640 Stambaugh Road. At her direction the bank made payouts on the loan as follows: Payee
Amount
Henkelman Construction
$ 5,275.00
Harry Williams
50.00
Leonard Reis
1,443.63
Lawrence Duescher
50.00
Northern Insulation
300.00
Beemster Electric
600.00
Joe Urcznevchak
50.00
Zeise Construction Co.
122.63
E. Garot & Sons
665.06
East River Lumber & Fuel
80.46
Badger Sheet Metal Co.
13.13
Hoffer Glass Co.
129.83
Marvill A. Martin
450.00
Attorneys' fees
1,701.00
Miscellaneous
1,069.26
Total
$12,000.00
In addition, the records of the various payees reveal the payment of the following costs. No specific evidence, however, has been adduced with reference to the source of these payments. Year
Payee
Amount
1951
Hoffer Glass
$ 20.00
1951
Hoffer Glass
2.31
1952
Hoffer Glass
2.38
1952
Hoffer Glass
100.00
1952
Hoffer Glass
100.00
1952
Richard Burnham
250.00
1953
Richard Burnham
36.98
1953
Richard Burnham
540.00
1952
Beemster Electric Co.
84.96
1952
Beemster Electric Co.
200.00
1952
Beemster Electric Co.
200.00
1953
Beemster Electric Co.
678.67 [1]
Total
$2,215.30
In addition, the bank deposit slips of Henkelman Construction Company reveal that the following payments were received: Date
Medium of
Deposited
Amount
Payment
Source
2/1/52
$ 285.00
Check
Unknown
2/1/52
100.00
Check
Unknown
2/1/52
10.00
Check
Unknown
3/14/52
1,800.00
Cash
Unknown In this connection, however, Bernard Henkelman testified that on one occasion H. Roy had transferred to him in payment third party checks of small denominations which bore his endorsements. Also, several checks drawn by H. Roy to the order of Henkelman Construction Company do not appear on the company's deposit slips, to wit: Date Drawn
Amount
3/11/52
$571.74
3/11/52
360.00
3/11/52
700.00
3/12/52
450.00
H. Roy's Financial Condition Findings of Fact H. Roy had assets and liabilities (exclusive of interest due) in the amounts indicated below: 1-1-50
12-31-50
12-31-51
12-31-52
Assets: Cash in banks, incl. acct. of
petitioner
$ 529.17
$ 1,096.22
$ 1,829.44 37.50
U.S. Savings Bonds
4,675.00
5,375.00
1,075.00
Cadillac auto (old)
1,000.00
1,000.00
800.00
600.00
Total Assets
$ 6,204.17
$ 7,471.22
$ 3,704.44
$ 637.50
Liabilities: Maude Joannes
$ 1,200.00
Mid-West Dairymen
64,437.85
$64,437.85
$64,437.85
$64,437.85
West Side State Bank
600.00
500.00
Federal tax liability: 1943
467.63
467.63
467.63
467.63
1944
347.49
347.49
347.49
347.49
1945
532.11
532.11
532.11
532.11
1946
277.90
277.90
277.90
277.90
1950
4,628.74
4,628.74
4,628.74
1951
3,653.18
3,653.18
1952
6,375.64
Total Liabilities
$67,262.98
$71,291.72
$74,844.90
$80,720.54
The *141 liability listed above as "Mid-West Dairymen" is a judgment against H. Roy in favor of the Mid-West Dairymen's Company in Winnebago County Circuit Court in the State of Illinois in the principal amount of $63,487.30, plus costs in the amount of $950.55. This judgment was filed on December 23, 1935. This judgment has never been collected, nor has it in any way been settled or compromised. Ultimate Findings of Fact H. Roy was insolvent during the years 1950, 1951, and 1952 and was insolvent during the year 1962. There was no possibility of the collection of liabilities either in 1962 or is there presently, due to H. Roy's death in 1964. Petitioner's Financial Condition Finding of Fact By the date of her marriage to H. Roy in 1947, petitioner had accumulated a moderate "cash hoard." These monies had been accumulated by petitioner from the following sources: an earlier divorce settlement; gratuities from patients whom she had cared for; and sales proceeds from the disposal of various items of personalty, including rugs, silver, jewelry, and books. [7] We find that the cash hoard amounted to no less than $10,000. In addition, in 1953 approximately $7,000, the net sales proceeds on the *142 sale of the Quincy Street property, was retained by petitioner. Issue 4 Opinion The basic issue for decision is whether petitioner is liable as a transferee for all or any portion of the income tax deficiencies and additions to tax of H. Roy. The burden of proving all the elements necessary to establish transferee liability is upon respondent. Sec. 1119; . As we stated in : A prima facie case of transferee liability is established if the respondent succeeds in proving, by competent evidence (1) that assets were transferred to the alleged transferee without consideration or for inadequate consideration; (2) that the transferor was insolvent or the transfer left the transferor insolvent or the transfer was a "purely voluntary conveyance conceived and made with the intent of hindering, delaying, and defrauding" the *143 Government; (3) that the assets transferred had value, and what that value was on the date of transfer; and (4) he has made every reasonable effort to collect the sums due. It is our opinion that respondent has met his burden of proof with regard to the above factors in reference to the transfer of the Cadillac automobile and with reference to certain amounts paid in connection with the construction of the residence at 640 Stambaugh Road. First, with reference to the alleged transfer made by H. Roy to petitioner during the years 1951, 1952, and 1953, the record reveals that there was a transfer of a then new Cadillac automobile during the taxable year 1951. Petitioner urges that the gratuitous transfer took place in 1947 and that the transaction in 1951 was merely an exchange. We cannot agree. We have found that up until the transfer to petitioner of the new Cadillac in 1951 both automobiles belonged to H. Roy, notwithstanding the fact that he and petitioner each were in the habit of using one of the automobiles exclusively. We hold that when H. Roy placed the new Cadillac in petitioner's name in 1951 he effectively made a transfer to her for less than adequate and full consideration. *144 The record also reveals that the fair market value of the automobile at the time of transfer was $3,700. Petitioner has testified that she paid additional cash on the purchase of the automobile for the purpose of obtaining that particular model. She has not, however, given this Court any factual basis on which to determine the actual amount so paid, [8] and consequently we cannot but affirm respondent's figure of $3,700 as being the value of the transfer. The second transfer alleged by respondent relates to the Quincy Street property. Petitioner has testified that the property was transferred to her in 1947 pursuant to a prenuptial agreement with H. Roy. During the course of the trial of this matter respondent introduced in evidence a revenue agent's report bearing on uncollectibility of taxes from H. Roy. Attached thereto and offered as proof of H. Roy's financial condition was a financial statement which contained the statement that the Quincy Street property had, in fact, been transferred to petitioner pursuant to the prenuptial agreement in 1947. Respondent's offer was intended to show that taxes were not *145 collectible because H. Roy had no distrainable assets and the financial statement was incorporated therein as proof thereof. In these circumstances respondent has in effect offered the statement of financial condition for the truth of the recitals contained therein and cannot now be heard to repudiate that one recital which he finds to be opposed to his claim. We hold that he is bound by the recital that petitioner was the owner of the Quincy Street property under the terms of the prenuptial agreement in 1947. (C.A. 5, 1937), affirming a Memorandum Opinion of the Board of Tax Appeals, certiorari denied . We also note that respondent's reliance on the exception stated in that case in an attempt to extricate himself from this situation is misplaced. [9] *146 Since it was owned by petitioner, the net proceeds of the sale in 1953 of the Quincy Street property were rightfully her property and cannot be considered as a transfer to her from H. Roy as respondent alleged by an amendment to his answer. The third transfer alleged by respondent relates to the Stambaugh Road property. Respondent contends that although the property was conveyed directly to petitioner by the Town & Country Corporation (seller), in fact, the property was purchased by H. Roy and was transferred to petitioner at his direction. Respondent's contention is not supported by the evidence. There is nothing whatever in the record which can be said to sustain respondent's position. The warranty deed recites that the transfer was to petitioner for consideration. Petitioner testified that she paid for the property out of her own funds and respondent has been unable to demonstrate any facts to the contrary. On this record we hold that respondent has not met his burden of showing that the property was in fact transferred to petitioner directly or indirectly from H. Roy. The final transfer or transfers alleged by respondent relates to the construction of a residence on the *147 Stambaugh Road property and the costs incurred therein. Respondent contends that the entire amount expended in the construction was a transfer from H. Roy to petitioner. Petitioner on the other hand argues that such payments were made from her own funds which she gave to H. Roy for the purpose of transmitting them to creditors. The burden of proof is again on respondent. With regard to those payments shown to have been made by H. Roy by means of checks drawn upon his account, we hold that respondent has carried his burden. With regard to the remaining payments for the residence construction, to wit, those paid for by the two mortgage loans, both secured by mortgages on property which we have found was owned by petitioner and those payments the source of which is unknown, we hold that respondent has failed to carry his burden. With reference to the former payments made by checks drawn on the account of H. Roy, respondent has adequately demonstrated that the payments are directly traceable to the funds of H. Roy. Because the property is in the name of petitioner, these payments are in effect transfers from H. Roy to her without adequate and full consideration. The same is to be said *148 for that payment made by H. Roy by means of a bank money order. There exists, however, a discrepancy between the list of checks drawn by H. Roy on his account to the Henkelman Construction Company and evidence introduced by respondent as to the amounts received by the Henkelman Construction Company in payment for the residence construction. The list of checks drawn by H. Roy to Henkelman's order reveal four checks which do not appear on Henkelman's deposit slips, namely: Date Drawn
Amount
3/11/52
$571.74
3/11/52
360.00
3/11/52
700.00
3/12/52
450.00 Since Bernard Henkelman testified that his deposit slips represented all business receipts for the period, with one exception not here relevant, we must conclude that the evidence relating to these four checks is at best ambiguous. Because the burden of proof is upon respondent, this ambiguity must be held against him. The amount of these four checks, therefore, will be deleted from the amount shown by respondent to have been paid for the residence construction by H. Roy. Moreover, respondent has not met his burden of proof in his attempt to show that those payments made with the proceeds of the two mortgage loans should be treated as having been *149 made by H. Roy. The record shows and we have found that the two properties in question were owned by petitioner. We can find nothing in the record which would enable us to conclude that these funds should be treated as other than those of petitioner. The fact that the loan papers secured by the Quincy Street property were signed by H. Roy is consistent with the fact that his name appears on the deed as the owner of record. In light of the finding that petitioner was in fact the owner, we are unable to infer merely from his signature on the loan papers that the loan proceeds should be attributed to him. In reference to the final group of payments, those whose source was not determined, we must again hold that respondent has failed to carry his burden because from the record we are unable to conclude that the funds which were used belonged to H. Roy. They may well have come from petitioner's own funds. [10] *150 The fact that H. Roy may have physically delivered a certain unspecified number of payments is not, on the basis of the entire record, conclusive of the fact that the funds so used belonged to him. In summary, therefore, we hold that the following transfers were made by H. Roy to or for the benefit of petitioner: Year
Description of Payment
Amount
1950
Cadillac automobile
$ 3,700.00
1951
Construction payments: Checks
1,223.97
Money order
2,535.00
1952
Construction payments: Checks
6,945.48
Total payments
$14,404.45
Having found that these transfers were in fact made, we must now determine whether H. Roy was insolvent at the time of each transfer. The facts relating to the insolvency issue are set forth in detail in our Findings of Fact and need not be repeated here. We pause to note, however, that petitioner's contention that the liability of H. Roy to the Mid-West Dairymen's Company as of the years 1950, 1951, and 1952 was barred by Illinois law is without merit. Though under Illinois law execution cannot be had on a judgment after seven years without first "reviving" said judgment, [11] the judgment is still a valid debt of the judgment-debtor and can be revived at any time until the statute of limitations has run, which in Illinois is 20 years. [12] We, therefore, hold that H. *151 Roy was insolvent at the time of the transfers in question. Finally, respondent has met his burden of showing that all reasonable efforts were made to collect the amount due from H. Roy. The documentary evidence adduced at the trial clearly established respondent's prima facie case in this respect and petitioner has not sought to contest this point. We therefore hold that petitioner is liable as a transferee of H. Roy's assets for unpaid income tax and additions to tax owed by him in the amount of the transfer found to have been made. She is liable up to the amount of each transfer for the transferor's taxes and additions to tax for prior years and for the year of transfer even though the transferor's tax liability for that latter year was unknown at the time of transfer. , affd. (C.A. 2, 1965). Decision will be entered under Rule 50. Footnotes
1. In addition, respondent has determined that petitioner, Berenice Joannes, is liable for interest on the above amounts as required by law.↩
2. In reference to the taxable years 1951 and 1952, H. Roy executed timely waivers which extended the statute of limitations for those years beyond May 1, 1959. No waivers were executed in connection with the taxable year 1950.↩
3. Petitioner's deposits were included in this analysis due to the fact that petitioner had no known independent source of current income for the years in question.
1. $600 of this payment was made as part of the payout by the Denmark State Bank on the mortgage loan taken out by petitioner on the residence.
4. All section references are to the Internal Revenue Code of 1939 unless otherwise stated.↩
5. We have also considered petitioner's challenges to the admissibility of certain records offered in evidence by respondent, and we find them to be without merit. These challenges have been considered however in relation to the weight given these various items.↩
6. Though the record does not specifically so state, it appears that titles to both cars were in the name of H. Roy.↩
7. Petitioner testified to the following items: Settlement with Charles Appel
$10,000
Gift from Clem Wade
3,000
Gratuities from patients
2,550
Sale of personalty
10,300
Total
$25,850
Petitioner also stated that in 1947 when she married H. Roy she had a cash hoard of approximately $16,000.↩
8. Petitioner testified merely that the additional cash was less than $1,000.↩
9. In (C.A. 5, 1937), affirming a Memorandum Opinion of the Board of Tax Appeals, certiorari denied , the Fifth Circuit held that in a situation where the Commissioner was required to introduce tax returns into evidence for the purpose of impeaching them for fraud, he would not be bound by the recitals contained therein.
10. The total amount of payments, the source of which is unknown, is less than $6,000, and we are convinced that petitioner's testimony has revealed that she had accumulated cash in excess of that amount.
11. Ill. Rev. Stat., ch. 77, sec. 6. ↩
12. Ill. Rev. Stat., ch. 83, sec. 24(b).↩